## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID SINGLER,** | ) | **Case No. 3:19-cv-172** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **v.** | ) | |
| | ) | |
| **JAMES CATERINO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM OPINION</u>

Pending before the Court is a motion for summary judgment filed by defendant James Caterino ("Defendant") on seven claims asserted against him by plaintiff David Singler ("Plaintiff"). (ECF No. 41). For the following reasons, this motion is **GRANTED IN PART** as to Counts III and VII, and it is **DENIED IN PART** as to Counts I, II, IV, V, and VI.

## I.     BACKGROUND

Shortly after 10:00 p.m. on June 20, 2019, Plaintiff was driving on East Carson Street in Pittsburgh, Pennsylvania, and became involved in a motor vehicle accident with nonparty Alex McComb ("Mr. McComb"). (ECF No. 43 at 1 ¶ 1; ECF No. 49 at 1 ¶ 1). After both drivers pulled over to the side of the road, Plaintiff exited his vehicle and asked Mr. McComb for his license and proof of insurance. (ECF No. 49 at 8 ¶ 43; ECF No. 53 at 1–2 ¶ 43). Mr. McComb refused to provide this information to Plaintiff. (*Id.*). Both Plaintiff and Mr. McComb then called 911 to report the accident and request police assistance. (ECF No. 43 at 2 ¶¶ 5–6; ECF No. 49 at 2 ¶¶ 5–6).

At the time of the accident, Defendant was at a Federal Bureau of Investigation ("FBI") building further down East Carson Street. (ECF No. 43 at 1 ¶ 3; ECF No. 49 at 2 ¶ 3). Defendant was a police detective employed by the borough of Munhall, Pennsylvania, but he had been assigned to detail with the FBI in Pittsburgh. (*Id.*). According to Defendant, he was off-duty at that time and had stopped by the FBI building with his wife—Roxanne Caterino ("Mrs. Caterino")—to retrieve items out of a seized vehicle. (ECF No. 43 at 1 ¶ 3, 4 ¶ 25). Defendant had driven there in an unmarked police vehicle. (ECF No. 43 at 2 ¶ 8; ECF No. 49 at 2 ¶ 8).

Although it is unclear exactly what precipitated Defendant's arrival at the scene of the accident, (*see* ECF No. 43 at 1–2 ¶¶ 4, 7; ECF No. 49 at 2 ¶¶ 4, 7), the parties agree that Defendant subsequently drove to that location with his wife and parked his vehicle behind Plaintiff's. (ECF No. 43 at 2 ¶ 8; ECF No. 49 at 2 ¶ 8). The parties agree that Defendant first spoke to Mr. McComb and then to Plaintiff outside of their cars, but the content of both conversations is disputed. (ECF No. 43 at 2 ¶¶ 10–11; ECF No. 49 at 2–3 ¶¶ 10–11). Plaintiff, who was still outside of his vehicle after exiting to speak with Mr. McComb, returned to his vehicle after speaking with Defendant and made another attempt to summon the police. (ECF No. 43 at 2 ¶ 12; ECF No. 49 at 3 ¶ 12). Shortly thereafter, Defendant approached Plaintiff's car, knocked on Plaintiff's car window, and stated "I'm a f*****g cop." (ECF No. 43 at 2 ¶¶ 13–14; ECF No. 49 at 3 ¶¶ 13–14). In response, Plaintiff demanded that Defendant show him identification to corroborate this statement. (ECF No. 43 at 3 ¶ 15; ECF No. 49 at 3 ¶ 15).

What happened next is the critical incident in dispute. According to Defendant, he retrieved his badge from his vehicle and returned to Plaintiff's car to show it to him. (ECF No. 43 at 3 ¶ 16). However, once Defendant had presented the badge, Plaintiff reached out and

aggressively grabbed at Defendant to take it from him.  (ECF No. 43 at 3 ¶¶ 18–19).  In doing this, Plaintiff scratched and cut Defendant with his fingernails.  (*Id.* ¶ 20).  Defendant responded by overcoming Plaintiff's physical resistance and removing Plaintiff from his vehicle.  (*Id.* ¶ 21).  He then pulled Plaintiff around to the back of the vehicle and over to the curb.  (*Id.* ¶ 23).

Plaintiff provides a different account: in response to Plaintiff's request for identification, Defendant replied, "I don't have to show you my badge. . . .  I'm not here to investigate anything. I'm here to make sure yinz don't get hit by any cars."  (ECF No. 149 at 3 ¶ 15).  Defendant then flashed something from underneath his shirt in a way that did not allow Plaintiff to ascertain whether Defendant had actually presented a badge.  (*See id.* at 3–4 ¶¶ 16–17).  Plaintiff then held out his hand, signaling a request for Defendant to place the badge in his palm, but did not reach for or grab at Defendant's badge.  (*Id.* at 4 ¶¶ 18–19).  Defendant responded to this gesture with force, grabbing Plaintiff by his shirt arm, pulling him out of his vehicle, and throwing him onto the road.  (*Id.* ¶ 21).

The parties generally agree about what happened next.  Defendant handcuffed Plaintiff, informed Plaintiff that he was "going to jail[,]" and called for a Pittsburgh police unit.  (ECF No. 43 at 4 ¶¶ 26, 28; ECF No. 49 at 5 ¶¶ 26, 28).  Upon arrival of a Pittsburgh police officer—Officer Spangler—Defendant informed him that Plaintiff had grabbed the badge out of his hand and acted "out of control."  (ECF No. 43 at 4 ¶ 29; ECF No. 49 at 5 ¶ 29).  Observing that Defendant was injured and Plaintiff was not, Officer Spangler concluded that Defendant was the victim and Plaintiff his assailant.  (ECF No. 43 at 5 ¶ 31; ECF No. 49 at 6 ¶ 31).  (The parties dispute whether Defendant was actually injured during the altercation).  (*See* ECF No. 43 at 4 ¶ 27; ECF No. 49 at

3

5 ¶ 27).  Officer Spangler subsequently filed criminal assault charges against Plaintiff.  (ECF No. 43 at 5 ¶ 35; ECF No. 49 at 6 ¶ 35).

Mr. McComb testified to having seen this incident unfold, although the parties dispute the veracity of his recollections.  Specifically, Plaintiff disputes Mr. McComb's statements that (a) he observed Plaintiff resist Defendant's efforts to place him under arrest, (ECF No. 43 at 4 ¶ 24; ECF No. 49 at 5 ¶ 24); and (b) Plaintiff appeared to be intoxicated during the incident.  (ECF No. 43 at 5 ¶ 32; ECF No. 49 at 6 ¶ 32).  The parties likewise dispute the veracity of those recollections offered by Mrs. Caterino, who was in Defendant's vehicle at the time of the incident.  (ECF No. 43 at 4 ¶ 25; ECF No. 49 at 5 ¶ 25).  Specifically, Plaintiff disputes Mrs. Caterino's statements that she (a) witnessed Plaintiff accost Defendant, (*id.*); and (b) called 911 and reported that a male actor was fighting with Defendant after the latter had stopped to assist with the accident.  (*Id.*).

On October 18, 2019, Plaintiff filed a complaint (the "Complaint") against Defendant in the United States District Court for the Western District of Pennsylvania.  (ECF No. 1).[1]  Plaintiff asserted the following seven claims therein:

(1) Count I: False Arrest under 42 U.S.C. § 1983 ("Section 1983"), (ECF No. 1 at 7–8 ¶¶ 51–59);
(2) Count II: False Imprisonment under Section 1983, (*id.* at 8–10 ¶¶ 60–66);
(3) Count III: Conspiracy to violate Section 1983 and the Fourth Amendment of the United States Constitution (the "Fourth Amendment"), (*id.* at 10–11 ¶¶ 73–80);
(4) Count IV: Excessive Force under Section 1983 and the Fourth Amendment, (*id.* at 12–13 ¶¶ 73–80);
(5) Count V: False Imprisonment under Pennsylvania common law, (*id.* at 13–15 ¶¶ 81–86);
(6) Count VI: Assault and Battery under Pennsylvania common law, (*id.* at 15–16 ¶¶ 87–91); and
(7) Count VII: Intentional Infliction of Emotional Distress ("IIED") under Pennsylvania common law, (*id.* at 16–17 ¶¶ 92–97).

_____

[1] Plaintiff originally filed his complaint against two additional defendants: Mr. McComb and a Jane Doe. (ECF No. 1).  However, these two defendants were terminated from the case on April 13, 2021.  (ECF No. 38).

On January 17, 2020, Defendant filed an answer to the Complaint (the "Answer").  (ECF No. 11).

He asserted sixteen affirmative defenses in his Answer, (*id.*), but did not ultimately move to

dismiss the Complaint at the pleading stage.  The parties proceeded with discovery, which closed

on March 1, 2021.  (ECF No. 32).

On May 26, 2021, Defendant filed a motion for summary judgment, (ECF No. 41), along

with a supporting brief, (ECF No. 42), a concise statement of material facts, (ECF No. 43), and an

appendix thereto.  (ECF No. 44).  On August 6, 2021, Plaintiff filed a response brief opposing

Defendant's motion for summary judgment, (ECF No. 51), along with a counter-statement of

material facts, (ECF No. 49), an appendix thereto, (ECF No. 50), and a supporting exhibit.  (ECF

No. 52).  On August 13, 2021, Defendant filed a response to Plaintiff's counter-statement of

material facts, (ECF No. 53), along with a reply to Plaintiff's response at ECF No. 51.  (ECF No.

54).  On February 15, 2022, Defendant filed a supplement to his motion for summary judgment.

(ECF No. 55).  And, on March 4, 2022, Plaintiff filed a response to Defendant's supplement.  (ECF

No. 56).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*,

477 U.S. at 247–48 (emphasis original).  A disputed fact is material if it might affect the case's

outcome under applicable substantive law.  *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d

Cir. 1998) (citing *Anderson*, 477 U.S. at 247–48).  Summary judgment is unwarranted where a reasonable jury, based on the evidence presented, could return a verdict favoring the non-movant on an issue on which the movant seeks summary judgment.  *See Anderson*, 477 U.S. at 248.

When ruling on a motion for summary judgment, the Court must draw all inferences in the light most favorable to the non-movant without weighing the evidence or questioning the witnesses' credibility.  *See Boyle*, 139 F.3d at 393.  Indeed, summary judgment is generally not appropriate when a case will turn on credibility determinations.  *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 255).

## III.   DISCUSSION

The Court will deny Defendant's motion for summary judgment on Counts I, II, IV, V, and VI.  As explained below, the claims asserted at Counts I, II, and V turn on a probable cause determination that cannot be made until the jury resolves an outstanding question of material fact: whether Plaintiff grabbed at Defendant and attempted to forcibly take his badge or merely offered out his hand.  The claims asserted at Counts IV and VI turn on a reasonableness determination—i.e., whether Defendant's use of force to pull Plaintiff out of his car and throw him onto the street was reasonable—that cannot be made until the jury resolves the factual question stated above.  Thus, the Court cannot presently resolve these claims as a matter of law.

Defendant's qualified immunity defense is unavailing for the same reason.  The relevant inquiry turns on whether a reasonable police officer would find (a) probable cause to arrest Plaintiff, and (b) that the amount of force used by Defendant to detain Plaintiff was reasonable.

Therefore, this inquiry also turns on the same factual question, which must be resolved by the jury before the Court can resolve the legal question of qualified immunity.[2]

---

[2] The parties apparently assume that Defendant had the authority to arrest Plaintiff and understand the dispositive issues in this case to be whether Defendant had probable cause to arrest Plaintiff and used a reasonable amount of force to do so. The Court will assume for purposes of this motion that Defendant was authorized to enforce the law because it makes no difference to the motion's resolution. However, the Court notes (without deciding) that Defendant likely lacked any legal authority to arrest Plaintiff.

Although Defendant was a police officer at the time of the incident, he was not a *Pittsburgh* police officer. It is undisputed that the incident occurred in the City of Pittsburgh, (ECF No. 43 at 1 ¶ 1; ECF No. 149 at 1 ¶ 1); that Defendant is a Munhall Borough police detective, (ECF No. 43 at 1 ¶ 3; ECF No. 49 at 2 ¶ 3); that he does not work for the City of Pittsburgh police department, (ECF No. 43 at 5 ¶ 36; ECF No. 49 at 6 ¶ 36); and that he has no authority over the actions or decisions made by the City of Pittsburgh police. (*Id.*). Courts may take judicial notice "of the divisions of a state or territory into towns or counties[,]" *Hoyt v. Russell*, 117 U.S. 401, 404 (1886), and the Court takes judicial notice that the Borough of Munhall and the City of Pittsburgh are distinct municipalities. *See* ALLEGHENY COUNTY, MUNICIPALITY LIST, https://apps.alleghenycounty.us/website/MuniList.asp (last visited June 15, 2023).

There are limited circumstances where Pennsylvania state police officers can perform official law enforcement duties outside of their primary jurisdiction, and none of them appear to be present here. Under Pennsylvania law,

> [a]ny duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction" in certain, enumerated circumstances.

42 PA. CONS. STAT. § 8953. The only one of these circumstances that could arguably apply here is the performance of law enforcement functions while on "official business[,]" *id.* § 8953(a)(5), but this argument is a weak one. The Supreme Court of Pennsylvania considers police officers' "official business" to be those actions performed "on duty . . . as part of their routine responsibilities." *Com. v. Merchant*, 595 A.2d 1135, 1139 (Pa. 1991). The circumstances where a police officer can pursue his "official business" in an adjoining jurisdiction are limited to "routine customary" incursions "such as a routine incursion into another jurisdiction to turn around and return to his regular patrol route[.]" *Com. v. Henry*, 943 A.2d 967, 970 (Pa. Super. 2008). The record in this case does not indicate that Defendant was on-duty and had entered the Pittsburgh city limits as part of a routine and customary incursion. It is undisputed that, "[a]t the time of the accident, Defendant James Caterino, a Munhall Borough police detective assigned to detail with the Federal Bureau [of] Investigation, was at the FBI building on East Carson Street to retrieve items out of a seized vehicle." (ECF No. 43 at 1 ¶ 3; ECF No. 49 at 2 ¶ 3). Defendant admits that "his stop at the FBI Headquarters was an errand during his off-duty hours." (ECF No. 43 at 4 ¶ 25). He also admits that he "voluntarily approached to assist [Plaintiff] and Mr. McComb after the accident, because he heard the accident." (ECF No. 42 at 2).

On the other hand, the Court will grant Defendant's motion for summary judgment on Counts III and VII. Plaintiff has withdrawn his Conspiracy claim at Count III, and the record contains no evidence indicating that Defendant intentionally inflicted severe emotional distress upon Plaintiff as alleged at Count VII.

### A. Section 1983 Claims (Counts I, II, and IV)

Plaintiff asserts three claims under Section 1983: False Arrest (Count I), False Imprisonment (Count II), and Excessive Force (Count IV). (ECF No. 1 at 7–13 ¶¶ 51–80). For the following reasons, the Court will deny Defendant's motion for summary judgment on each of these claims.

#### a. False Arrest (Count I)

A claim for false arrest under Section 1983 originates from the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). To succeed on his Section 1983 false arrest claim, Plaintiff must show that Defendant lacked probable cause to arrest him. *See id.* at 634.

The record contains evidence that could allow a reasonable jury to conclude that Defendant lacked probable cause to arrest Plaintiff. Arguing for summary judgment, Defendant

---

It is therefore doubtful that Defendant had any legal authority to arrest Plaintiff. This fact would not undermine Plaintiff's Section 1983 claims at Counts I, II, and IV because liability under that statute does not presuppose that the defendant actually had the authority to exercise state power. The threshold issue in the Section 1983 context is whether the official acted "under color of law[,]" *Versarge v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1363 (3d Cir. 1993), which only involves acting "under 'pretense' of law[.]" *Screws v. United States*, 325 U.S. 91, 111 (1945). A police officer acts under color of law if he displays "[m]anifestations of . . . pretended authority" such as "flashing a badge, identifying oneself as a police officer, [or] placing an individual under arrest[.]" *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). This precedent makes clear that Defendant acted under color of law. As for the Pennsylvania tort claims at Counts V and VI, it is less clear to the Court whether these claims can be asserted against non-state actors; this is an issue that the parties can investigate if it becomes necessary to do so.

asserts that "all evidence demonstrates that [he] was supported by probable cause when he handcuffed [Plaintiff,]" and that "[t]here is no competent evidence to the contrary . . . ." (ECF No. 42 at 7). It is true that "a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect[,]" *Williams v. Borough of W. Chester*, 891 F.3d 458, 460 (3d Cir. 1989), but Plaintiff has not attempted to do that here. Instead, Plaintiff opposes summary judgment with ample facts drawn from depositions that undoubtedly constitute competent evidence. (*See* ECF No. 44) (appendix of exhibits to Defendant's concise statement of material facts, including the depositions of Plaintiff, Defendant, Mr. McComb, and Officer Spangler). *See also Celotex Corp. v. Catrett*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.") (citing FED. R. CIV. P. 56(e)).

These depositions—Plaintiff's own deposition, in particular—place into the record evidence indicating that Defendant arrested Plaintiff without probable cause. This evidence indicates that the incident unfolded in the following manner: upon Defendant's arrival at the scene of the accident, Plaintiff exited his vehicle and asked Defendant if he was a law enforcement officer. (ECF No. 49 at 10 ¶ 50). Defendant replied by saying, "I don't have to show you my badge. . . . I'm not here to investigate anything. I'm here to make sure yinz don't get hit by any cars." (*Id.* at 3 ¶ 15). Defendant then flashed something from underneath his shirt in a manner that did not allow Plaintiff to ascertain whether Defendant had actually presented a badge. (*See id.* at 3–4 ¶¶ 16–17). Plaintiff then held out his hand, signaling a request for Defendant to place the badge in his palm, but did not reach for or grab at Defendant's badge. (*Id.* at 4 ¶¶ 18–19).

Defendant then grabbed Plaintiff by his shirt and arm, pulled him out of his vehicle, and threw him onto the road. (*Id.* ¶ 21). After that, Defendant handcuffed Plaintiff, informed Plaintiff that he was "going to jail[,]" and called for a Pittsburgh police unit. (ECF No. 43 at 4 ¶¶ 26, 28; ECF No. 49 at 5 ¶¶ 26, 28).

There is also record evidence—the depositions of Defendant and Mr. McComb—indicating that Defendant did have probable cause to arrest Plaintiff. This case therefore boils down to a credibility conflict between these various testimonies that is properly left for jury resolution. Indeed, "the question of probable cause in a section 1983 damage suit is one for the jury[,]" and "[t]his is particularly true where the probable cause determination rests on credibility conflicts." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). Because the Court cannot presently determine whether Defendant had probable cause to arrest Plaintiff, it will deny Defendant's motion for summary judgment on Plaintiff's Section 1983 false arrest claim. *See Groman*, 47 F.3d at 634.

### b. False Imprisonment (Count II)

"[F]alse arrest and false imprisonment are essentially the same claim," *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999), and this characterization holds true for Section 1983 claims for false arrest and false imprisonment. *Curry v. Yachera*, No. 14-CV-5253, 2015 WL 1186014, at *5 n.20 (E.D. Pa. Mar. 13, 2015). Accordingly, like his Section 1983 false arrest claim, Plaintiff's Section 1983 false imprisonment claim depends on a showing that Defendant arrested Plaintiff without probable cause. *Id.*

The Court concluded in Section III.A.a, *supra*, that the question of whether Defendant had probable cause to arrest Plaintiff cannot be answered without resolving the credibility conflict

between Plaintiff, Defendant, and other witnesses.  Because resolving this credibility conflict is a task properly left for the jury, the Court held that the question of probable cause was one best left for the jury as well.  This holding led the Court to deny Defendant's motion for summary judgment on Plaintiff's False Arrest claim at Count I, and it likewise leads the Court to deny this motion on Plaintiff's False Imprisonment claim at Count II.

### c.  Excessive Force (Count IV)

Claims that police officers used excessive force against a plaintiff likewise invoke the Fourth Amendment's prohibition against unreasonable seizures.  *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  These claims "require . . . a plaintiff to show that a seizure occurred and that it was unreasonable."  *Id.* (quoting *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002)).  Because such a determination depends on "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," the Third Circuit has held that "[t]he reasonableness of the use of force is normally an issue for the jury."  *Rivas*, 365 F.3d at 198 (citing *Abraham v. Raso*, 183 F.3d 279, 290–91 (3d Cir. 1999)).

Here, there are key questions of fact that make a reasonableness determination at the summary judgment stage inappropriate.  Of particular importance is the unresolved question as to whether Plaintiff reached out to grab Defendant's badge or merely offered out his palm to receive it.  (*See* ECF No. 43 at 3 ¶¶ 18–19; ECF No. 149 at 4 ¶¶ 18–19).  Whether Defendant's decision to forcibly remove Plaintiff from his vehicle and handcuff him was reasonable or not surely depends on which version of the incident is true.  Because this factual question is an issue for the jury, the Court will deny Defendant's motion for summary judgment on Count IV.

### d.  Qualified Immunity

The doctrine of qualified immunity poses no obstacle here to Plaintiff's ability to take his Section 1983 claims to trial. Law enforcement officers are entitled "not to stand trial or face the other burdens of litigation" unless it can be shown that (1) they violated a statutory or constitutional right, and (2) the right was clearly established at the time of the conduct. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the official at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was lawful." *Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000). "Accordingly, the Court must first examine the state of the relevant law at the time of [Plaintiff's] arrest and then turn to an analysis of the information available to [Defendant] at that time." *Id.* "The ultimate issue will then be whether, given the established law and the information available to [Defendant], a reasonable law enforcement officer in [Defendant's] position could have believed that his conduct was lawful." *Id.*

In Counts I, II, and IV, Plaintiff asserts that Defendant violated his Fourth Amendment right "to be secure in [his] person[], houses, papers, and effects, against unreasonable searches and seizures." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). An arrest qualifies as a "seizure" of a "person" under this provision. *Id.* However, "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* at 742. "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015). Rather, the right in question must be defined with a "high degree of specificity[,]" such that

probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018) (internal quotations omitted).

Here, the Court's ability to specifically define the right in question—as well as its ability to determine the existence of qualified immunity altogether—is precluded by its inability to resolve this case's key factual issue at the summary judgment stage. The record contains evidence indicating that Defendant arrested Plaintiff for merely holding out his hand, absent any indicia of criminal activity, and that Defendant effectuated this arrest with harsh physical force. Such evidence, if accurate, would make this a "rare obvious case" where no examination of precedent is necessary to find that Defendant violated clearly established law. *Wesby*, 138 S.Ct. at 590. Simply put, no reasonable police officer would think that arresting Plaintiff under those circumstances, or in that manner, would be lawful. However, the record also contains evidence indicating that Defendant arrested Plaintiff after the latter violently grabbed at the former to take his badge from him. Under those circumstances, it would be just as clear that Defendant's conduct did not violate clearly established law. (Indeed, it would not have violated *any* law, clearly established or otherwise). The legal issue of qualified immunity with respect to all of Plaintiff's Section 1983 claims depends on how this disputed factual issue is resolved.

Although Defendant's qualified immunity defense "should be resolved as early as possible[,]" *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998), the Court cannot resolve that defense until it resolves the predicate factual issue. "[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006). In that event, summary judgment based on qualified immunity is inappropriate. *See Brunelle v. City of Scranton*, No. 3:15-CV-960, 2019 WL 1584601, at *7 (M.D. Pa.

Apr. 12, 2019).  Thus, Defendant's qualified immunity defense cannot give the Court a basis for granting summary judgment on Plaintiff's Section 1983 claims.

### B.  Conspiracy (Count III)

Plaintiff has withdrawn his Conspiracy claim at Count III.  (ECF No. 51 at 2 n.1).  Accordingly, the Court grants Defendant's motion for summary judgment on this claim.

### C.  Pennsylvania Common Law Claims (Counts V, VI, and VII)

Plaintiff asserts three claims under Pennsylvania common law: False Imprisonment (Count V), Assault & Battery (Count VI), and Intentional Infliction of Emotional Distress ("IIED") (Count VII).  For the following reasons, the Court will deny Defendant's motion for summary judgment on Counts V and VI, but will grant this motion on Count VII.

#### a.   False Imprisonment (Count V)

Under Pennsylvania law, as under federal law, "false arrest and false imprisonment are essentially the same claim."  *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008).  "Pennsylvania state law false arrest claims and federal constitutional [i.e., Section 1983] false arrest claims are co-extensive as to both elements of proof and elements of damages."  *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000).  "[C]ases involving false arrest claims against police officers turn on the existence or nonexistence of probable cause."  *Kokinda*, 557 F. Supp. 2d at 593.  Therefore, Pennsylvania False Imprisonment claims turn on the existence of probable cause, just as Section 1983 False Imprisonment claims do.

In Section III.A.b, *supra*, the Court denied Defendant's motion for summary judgment on Plaintiff's Section 1983 False Imprisonment claim at Count II because the legal issue of probable cause turns on the outcome of an outstanding factual question that is properly left for jury

resolution.   Because Plaintiff's Pennsylvania False Imprisonment claim likewise cannot be resolved without jury factfinding, the Court will deny Defendant's motion for summary judgment on Count V as well.

### b.   Assault & Battery (Count VI)

At Count VI, Plaintiff brings a claim for "Assault and Battery" under Pennsylvania common law.  (ECF No. 1 at 15–16).  Although an "assault and battery" claim "actually comprises two separate tort theories[,]" *Laktis v. York*, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003), courts address the torts of assault and battery together through a single excessive force analysis.  *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 644 (E.D. Pa. 2014); *Russoli v. Salisbury Tp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000).  The Pennsylvania Supreme Court lays out this analysis as follows:

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  In other words, an "assault and battery" claim receives the same analysis as an excessive force claim, with reasonableness being the key consideration.

As noted in Section III.A.c, *supra*, there are disputed facts that preclude the Court from determining whether Defendant's use of force on Plaintiff was reasonable.  The Court must therefore deny Defendant's motion for summary judgment on Count VI.

### c.   Intentional Infliction of Emotional Distress (Count VII)

To succeed on his IIED claim, Plaintiff must offer "competent medical evidence" showing that he "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct[.]" *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) (citing *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010)). The Pennsylvania Supreme Court understands "competent medical evidence" to be an "expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). Because Plaintiff has produced no expert medical confirmation that he suffered a physical harm due to Defendant's conduct, no reasonable jury could find Defendant liable for IIED. The Court will therefore grant Defendant's motion for summary judgment on Count VII.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID SINGLER, | ) | Case No. 3:19-cv-172 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| JAMES CATERINO, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

**NOW**, this 20th day of June, 2023, for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendant's motion for summary judgment at ECF No. 41 is **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) Defendant's motion is **GRANTED** on Counts III and VII. These Counts are **DISMISSED WITH PREJUDICE**.

(2) Defendant's motion is **DENIED** on Counts I, II, IV, V, and VI.

BY THE COURT

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

17